**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| ACE AMERICAN INSURANCE COMPANY | Case No. 2:14-cv-00703-APG-NJK |
| Plaintiff, | |
| v. | **DEFENDANTS' MOTIONS TO PRECLUDE ENFORCEMENT OF JUDGMENT** |
| LAWRENCE HALLIER, et al., | |
| Defendants. | **(Dkt. ##21, 22)** |

This case involves agreements plaintiff ACE American Insurance Company ("ACE") made in 2005 with two Nevada limited liability companies. Ace agreed to provide management services and worker's compensation insurance during the building of a condominium project in Las Vegas. ACE claims these companies breached their obligations under the insurance agreements; in accordance with the terms of the agreements, it arbitrated this dispute in Philadelphia, Pennsylvania. Defendants did not participate in the arbitration, so ACE received awards against each of the entities. Ace then confirmed the awards in the United States District Court for the Eastern District of Pennsylvania and now seeks to enforce them here in Nevada. But defendants argue that the judgment confirming the awards is invalid because the Pennsylvania court lacked personal jurisdiction over them.

The guiding principle of the "minimum contacts" test at the heart every personal jurisdiction analysis is fairness: was it fair, based on a defendant's conduct and connection with a particular state, for the defendant to anticipate being haled into court there? In this case, I find that it was fair for defendants to anticipate being haled into court in Pennsylvania—not for all claims ACE might

bring against them, but for the limited purpose of defending the confirmation of the arbitration award. Section 9 of the Federal Arbitration Act put defendants on notice that they might be haled into court in Pennsylvania. The terms of the insurance agreements they signed put defendants on notice that they might be haled into court in Pennsylvania. And so did the anticipated future consequences of those agreements—namely, that at some point, because they agreed to go to Pennsylvania to arbitrate, they also might need to go to Pennsylvania to defend against confirmation of a resulting arbitration award. I therefore deny defendants' motions to preclude enforcement of the judgment entered against them.[1]

## BACKGROUND

### Parties

ACE is incorporated in Pennsylvania. On July 26, 2004, it entered into an agreement with defendant Sasson Hallier Properties ("Sasson Hallier") to provide management services and worker's compensation insurance during the building of Panorama Towers, a condominium project in Las Vegas.[2] On March 15, 2005, it entered into a similar agreement with defendant Panorama Towers II ("PT II").[3]

Both Sasson Hallier and PT II were limited liability real estate companies in Nevada.[4] Neither owned or leased any property in Pennsylvania.[5] Neither had any employees working in

---

[1] On December 5, 2014, PT II filed a joinder to Sasson Hallier's motion to preclude enforcement of the judgment. (Dkt. #44.) ACE opposed, arguing that the joinder was untimely. (Dkt. #52.) But because PT II sufficiently explained why its joinder was untimely and because allowing its arguments—which are the same as Sasson Hallier's—would not prejudice ACE, I allow PT II to join.

[2] (Dkt. #22 at 4.)

[3] (Dkt. #21 at 4.)

[4] Neither Sasson Hallier nor PT II is still in business. (Dkt. #21 at 4, Dkt. #22 at 4.)

[5] (Dkt. #21 at 4, Dkt. #22 at 4.)

Pennsylvania nor operated any offices in Pennsylvania.[6]  Neither had a Pennsylvania address, phone number, or bank account.[7]

At some point, ACE sent Sasson Hallier and PT II notices of bills that had not been paid. [8] PT II contests the amount ACE claimed it was owed.[9]  The parties had agreed in the insurance agreements to settle any disputes "arising out of or relating to this agreement" in Philadelphia, Pennsylvania via arbitration.[10]  They also agreed that "Judgment may be entered upon the award of the arbitrators in any court of competent jurisdiction."[11]

ACE initiated and conducted an arbitration proceeding in Philadelphia.  Despite receiving proper notice, neither Sasson Hallier nor PT II participated in the arbitration.  The arbitrators ordered Sasson Hallier to pay ACE a total of $1,034,476.96 for contract-related damages, interest, and attorneys' fees.[12]  They similarly ordered PT II to pay $192,196.54.[13]  Defendants contend, without citing any evidence, that the reason both Sasson Hallier and PT II failed to appear for the arbitration proceedings is because ACE indicated to them that it would not try to collect upon the

---

[6] (Dkt. #21 at 4, Dkt. #22 at 4.)

[7] (Dkt. #21 at 4, Dkt. #22 at 4.)

[8] (Dkt. #25 at 3, Dkt. # 21 at 2.)

[9] (Dkt. #21 at 3.)

[10] (*See* Dkt. #26-1 at 7 ("Any controversy, dispute, claim or question arising out of or relating to this agreement, including without limitation its interpretation, performance, or non-performance by any party, or any breach thereof (hereafter, collectively "Controversy") shall be referred to and resolved exclusively by three arbitrators through private, confidential arbitration in Philadelphia, PA.").)

[11] (*Id.*)

[12] (Dkt. #22 at 5.)

[13] (Dkt. #21 at 5.)

awards. According to Sasson Hallier and PT II, ACE said it wanted the arbitration awards solely for tax purposes.[14]

ACE, however, insists that it made many attempts to convince Sasson Hallier and PT II to participate in the arbitration and frequently requested payment.[15] ACE further insists that it tried to have the two entities satisfy the arbitration awards before ultimately moving to confirm the awards in court.[16] When ACE sought confirmation of the arbitration awards, again neither Sasson Hallier nor PT II appeared.[17] ACE then moved to register the Pennsylvania court's judgments here in this court, and in July of 2012, the clerk of this court domesticated the judgments.[18]

ACE pursued post-judgment discovery in accordance with Federal Rule of Civil Procedure 69. It deposed Lawrence Hallier, a real estate developer who ACE contends is responsible for ACE not being paid the money it is allegedly owed.[19] On May 5, 2014, ACE brought suit against Hallier and several other companies ACE claims are Hallier's alter egos. It wants this court to enforce the Pennsylvania judgments against Sasson Hallier and PT II and also to pierce the corporate veil it claims Hallier has created.[20] ACE's specific causes of actions are

---

[14] (*Id.*)

[15] (Dkt. #25 at 3.)

[16] (*Id.* at 4.)

[17] (Dkt. #21 at 5.)

[18] (*Id.* at 6.)

[19] (Dkt. #25 at 4-9.)

[20] (Dkt. #1 at 8.)

(1) fraudulent conveyance, (2) breach of fiduciary duty (based on the trust fund doctrine), (3) fraudulent concealment, and (4) declaratory judgment of alter-ego liability.[21]

About four months after ACE filed its complaint, Sasson Hallier and PT II each filed motions requesting that I declare the Pennsylvania judgments against them void for lack of personal jurisdiction. Sasson Hallier also filed a Motion to Dismiss, which PT II joined.  In this order, however, I address only the jurisdictional issue and the validity of the Pennsylvania judgment.

## DISCUSSION

### 1.  Personal Jurisdiction

"The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process."[22]  Here, the parties have agreed to be governed by Pennsylvania law, and Pennsylvania's long-arm statute authorizes jurisdiction to the full extent permitted by the Constitution.[23]  I therefore need to determine only whether the exercise of jurisdiction over defendants would be consistent with due process.

### A.  Minimum Contacts: General Jurisdiction and Specific Jurisdiction

Due process requires the defendant have at least "minimum contacts" with the forum state so that "maintenance of the suit does not offend traditional notions of fair play and substantial

---

[21] (*Id*. at 21-27.)

[22] *Pebble Beach v. Caddy*, 453 F.3d 1151, 1154–55 (9th Cir. 2006).

[23] 42 Pa. Const. Stat. Ann. § 5322(b).

justice."[24]  "[T]he defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there."[25]  "[I]t is the defendant, not the plaintiff or third parties, who must create contacts with the forum State."[26]

When analyzing whether a defendant has sufficient minimum contacts with a forum state, courts distinguish between general jurisdiction and specific jurisdiction.  General jurisdiction is appropriate when the defendant's forum activities are so "substantial, continuous and systematic"[27] that the defendant can be deemed to be "essentially at home in the forum state."[28]  "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world."[29]  In this case, none of the parties contends that the Pennsylvania court could exercise general jurisdiction over Sasson Hallier or PT II.

Specific jurisdiction, on the other hand, exists if "the defendant purposely avails itself of the privilege of conducting activities within the forum State . . . [and] the controversy [is] sufficiently related to or arose out of [the defendant's] contacts with the forum state."[30]  "This

---

[24] *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).

[25] *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).

[26] *Walden v. Fiore,* 134 S. Ct. 1115, 1121 (2014).

[27] *Doe v. Unocal Corp*., 248 F.3d 915, 922 (9th Cir. 2001).

[28] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011); *see also Daimler AG v. Bauman*, 134 S.Ct 746, 757-762 (2014).

[29] *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 801 (9th Cir. 2004).

[30] *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F3d 267, 270 (9th Cir. 1995).

purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts."[31]

The Ninth Circuit has established a three-prong test for determining specific jurisdiction:

a.   The non-resident defendant must purposefully direct its activities or consummate some transaction with the forum or resident thereof, or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

b.   the claim must be one which arises out of or relates to the defendant's forum-related activities; and

c.   the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.[32]

The plaintiff bears the burden of satisfying the first two prongs.  If they are satisfied, then the burden shifts to the defendant to show why the exercise of personal jurisdiction would be unreasonable.[33]

### (a) Purposeful Availment

The Ninth Circuit treats purposeful availment in tort cases differently from purposeful availment in contract cases.[34]  In contract cases like this one, the Ninth Circuit "typically inquires whether a defendant purposefully avails itself of the privilege of conducting activities or consummates a transaction in the forum."[35]  The focus is on activities such as "delivering goods or executing a contract" within the forum.[36]  It is not enough that a defendant has signed a

---

[31] *Id.*

[32] *Schwarzenegger*, 374 F.3d at 801.

[33] *Id.*

[34] *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitism*, 433 F.3d 1199, 1206 (9th Cir. 2006) (quotations omitted).

[35] *Yahoo! Inc.* 433 F.3d at 1206 (quotations omitted).

[36] *Id.*

7

contract with a party that resides in the forum.[37]  Courts instead should look for whether the defendant has "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state."[38]

Accordingly, the Supreme Court has emphasized "the need for a highly realistic approach when it comes to personal jurisdiction in contract cases," one  "that recognizes that [a] 'contract' is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real objects of the business transaction."[39]  From this emphasis, courts have concluded that "the contemplated future consequences [of a contract] are often of particular significance, with future consequences essentially being where the contract will be performed."[40]  The Ninth Circuit in particular has adopted three factors to consider: (1) prior negotiations and contemplated future consequences, (2) the parties' actual course of dealing, and (3) the terms of the contract.[41]

These factors, however, and the purposeful availment requirement in general, are "but a test for determining the more fundamental issue of whether 'a defendant's conduct and connection with the forum state are such at he should reasonably anticipate being haled into court there."[42]  The key question is one of due process: would it be fair, based on Sasson Hallier and PT

---

[37] *Unocal*, 248 F.3d at 923 ("[A]n individual's contract with an out-of-state party alone cannot establish sufficient minimum contacts to support personal jurisdiction.").

[38] *Id*. at 924.

[39] *Burger King v. Rudzewicz*, 471 U.S. 462, 478 (1985).

[40] *IPS Shared Tech. Servs. v. Overwatch Sys., Ltd*., No. C-14-1112, 2014 U.S. U.S. Dist. LEXIS 69878, at *7 (N.D. Cal. May 20, 2014); *see also Selhorst v. Alward Fisheries, LLC*, No. C-11-3266, 2011 U.S. Dist. LEXIS 120810, at *10-11 (N.D. Cal. Oct 19, 2011).

[41] *Unocal*, 248 F.3d at 924.

[42] *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd*., 784 F.2d 1392, 1397 (9th Cir. 1986). The *Haisten* court also makes clear that "jurisdiction may be exercised with a lesser showing of

II's contacts with Pennsylvania, for them to expect to be have to defend themselves in a Pennsylvania court?

I find that it would be fair.  "[A]ctivity by the defendant need not physically take place in the forum state so as to constitute sufficient contact under the due process test."[43]  So even though neither Sasson Hallier nor PT II has ever performed any activity in Pennsylvania, that does not mean they are freed from the expectation of being haled into court there.  Three things put them on notice that it was not only possible but likely that they would be haled into a Pennsylvania court to defend the confirmation of the arbitration awards.

First, the language of Section 9 of the Federal Arbitration Act put them on notice.  That section makes clear that "[i]f no court is specified in the agreement of the parties, then such application [to confirm an arbitration award] may be made to the United States Court in and for the district within which such award was made."[44]  Once the adverse party is served with the application to confirm the award, "the court shall have jurisdiction of such party as though he had appeared generally in the proceeding."[45]  Here, no court was specified in the agreements, so according to Section 9, ACE could seek to confirm the awards in the forum where they were made—which, pursuant to the arbitration clause in the agreements, was Pennsylvania.  ACE served Sasson Hallier and PT II with notice of its application to the Pennsylvania court.  Sasson

---

minimum contact than would otherwise be required if considerations of reasonableness dictate." *Id.* at 1397.

[43] *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1397 (9th Cir. 1986).

[44] 9 U.S.C. § 9.

[45] *Id.*

Hallier and PT II should have expected that, under FAA Section 9, they might have to defend against the arbitration awards in that state.[46]

They also should have expected this based on the terms of the insurance agreements and the future consequences they contemplated.  Sasson Hallier and PT II explicitly agreed, via the agreements' arbitration clauses, that "[a]ny controversy, dispute, claim or question arising out of or relating to this agreement . . . shall be referred to and resolved exclusively by three arbitrators through private, confidential arbitration in Philadelphia, PA."[47]  The future consequences they contemplated, in other words, included travel to Pennsylvania to arbitrate any disputes.[48]  They reasonably should have expected, therefore, that they would also have to travel to Pennsylvania to defend against the confirmation of any resulting arbitration award (particularly given the language of FAA Section 9 and the absence of any terms in the agreements suggesting otherwise).

---

[46] I do not hold that the FAA creates personal jurisdiction in Pennsylvania for any claim ACE might try to bring against Sasson Hallier and PT II.  Nor do I hold, as many courts have, that under the FAA, an agreement to arbitrate disputes in a forum state constitutes consent to personal jurisdiction in that state for the purpose of enforcing the arbitration award. *See St. Paul Fire & Marine Ins. Co. v. Courtney Enters., Inc*. 270 F.3d 621, 624 (8th Cir. 2001); *Armstrong v. Assocs. Int'l holdings Corp*., 242 F. App'x 955, 957 (5th Cir. 2007); Doctor's Assocs. V. Stuart, 85 F.3d 975, 979. (2d Cir. 1996); *Union Mutual Sock Life Ins. Co. of Am. v. Beneficial Life Ins. Co*., 774 F.2d 524, 527 (1st Cir. 1985).  However, I find that FAA Section 9 is a factor in the analysis whether defendants should reasonably expect to be haled into court to confirm an award in the state where they agreed to arbitrate.  The phrasing of a district court in the Southern District of New York is particularly instructive: "Congress has manifested its intention to permit a federal court sitting in the district where the arbitration award was rendered to exert personal jurisdiction." *Colavito v. Hockmeyer Equip. Corp*, 605 F. Supp. 1482, 1485 (S.D.N.Y. 1985).

[47] (*See* Dkt. #26-1 at 7.)

[48] *See St. Paul Fire & Marine Ins. Co. v. Courtney Enters., Inc*. 270 F.3d 621, 624 (8th Cir. 2001); *Armstrong v. Assocs. Int'l Holdings Corp*., 242 F. App'x 955, 957 (5th Cir. 2007); Doctor's Assocs. V. Stuart, 85 F.3d 975, 979. (2d Cir. 1996); *Union Mutual Sock Life Ins. Co. of Am. v. Beneficial Life Ins. Co.*, 774 F.2d 524, 527 (1st Cir. 1985).

In sum, I acknowledge that the general focus of the contractual relationship between ACE and Sasson Hallier and PT II was not in Pennsylvania.  The agreements were designed to provide management services and worker's compensation insurance for a condominium project being built in Nevada.  All the payments Sasson Hallier and PT II made to ACE came from Nevada.  And no authorized agent of either Sasson Hallier or PT II ever performed any duties in or travelled to Pennsylvania.  But jurisdiction is not an either/or proposition determined by which state has the most contacts.  Moreover, "jurisdiction may be exercised with a lesser showing of minimum contact that would be otherwise be required if considerations of reasonableness dictate."[49]  And here, because Sasson Hallier and PT II explicitly agreed to arbitrate in Pennsylvania, reasonableness dictates that it is was fair for them to anticipate being haled into a Pennsylvania court to defend against confirmation of the resulting arbitration awards.  In this way, Sasson Hallier and PT II purposefully availed themselves of Pennsylvania.

**(b) The Relation of the Claim to the Defendants' Forum-Related Activities**

The Ninth Circuit has adopted the "but for" test when determining whether the claim at issue arises out of the defendants' forum-related activities.[50]  If the underlying dispute would not have arisen but for Sasson Hallier and PT II's contact with Pennsylvania, I should find that the claim arises out of their forum-related activities.

The underlying dispute here is a narrow one: was it proper for ACE to confirm its arbitration awards in the Pennsylvania court?  "But for" Sasson Hallier and PT II agreeing to arbitrate in Pennsylvania, this dispute would likely not have arisen.  And "but for" the arbitration

---

[49] *Haisten*, 784 F.2d at 1397.

[50] *See Unocal* 248 F.3d at 924 ("To determine whether a claim arises out of forum-related activities, courts apply a 'but for' test. Here, the Court considers whether plaintiff's claims would have arisen but for [the defendant's] contacts with California.").

in Pennsylvania, FAA Section 9 likely would not have authorized confirmation of the awards by the Pennsylvania court.  It is difficult to imagine ACE trying to confirm the award in Pennsylvania had not Sasson Hallier and PT II explicitly consented to arbitrate there.  The claim therefore arises out of their forum-related activities.[51]

### (c) Reasonableness

The Ninth Circuit has held that the reasonableness inquiry requires consideration of the following seven factors: (1) the extent of the defendants' purposeful interjection into Pennsylvania's affairs; (2) the burden on Sasson Hallier and PT II of defending in Pennsylvania; (3) the extent of conflict with the sovereignty of Nevada; (4) Pennsylvania's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of Pennsylvania to ACE's interest in convenient and effective relief; and (7) the existence of an alternative forum.[52]

I have considered all these factors in concluding that reasonableness dictates that it is fair for Sasson Hallier and PT II to be haled into a Pennsylvania court for confirmation of the arbitration awards.  In terms of factor one, the extent of Sasson Hallier and PT II's purposeful interjection into Pennsylvania may not be enough to justify bringing them to Pennsylvania for any claim ACE tries to bring, but it is enough to justify bringing them there for the limited purpose of confirmation of the arbitration awards.  Similarly, the burden of defending against confirmation in

---

[51] Sasson Hallier and PT II argue that the underlying dispute is instead much broader—that it is, in fact, the entire alleged non-payment by Sasson Hallier and PT II under the insurance agreement.  (*See* Dkt. #21 at 16 and Dkt. #22 at 16.)  But that argument incorrectly focuses on the overarching dispute that was resolved through the arbitration.  I would have no subject matter jurisdiction to resolve that dispute because the parties' agreed to arbitrate it.  The particular dispute before me in this case is whether the resulting awards were properly confirmed by the Pennsylvania court.

[52] *See Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995).

Pennsylvania—articulated in factor two—seems no different than the burden Sasson Hallier and PT II already agreed to undertake in the agreements: travelling to Pennsylvania to arbitrate. Factor three, the extent of conflict with the sovereignty of Nevada, favors neither party.  Factor four, protecting Pennsylvania's interest, favors ACE, which is a Pennsylvania corporation.  Factor five, judicial economy, also favors ACE: it seems efficient to confirm an arbitration award in the same state in which the arbitration was held.  Factor six, the importance of Pennsylvania to ACE for convenient and effective relief, clearly favors ACE.

Finally, factor seven, the existence of an alternate forum, may be the only factor that favors Sasson Hallier and PT II.  Pennsylvania was not the only forum in which ACE could have tried to confirm the arbitration award; it could have also tried to confirm the award in Nevada. But this single factor is not enough to offset the many factors that indicate it was reasonable for the Pennsylvania court to exercise personal jurisdiction over Sasson Hallier and PT II when it confirmed the arbitration award.  Accordingly, Sasson Hallier and PT's motions to preclude enforcement of that judgment are both denied.

## CONCLUSION

IT IS HEREBY ORDERED that Panorama Towers, II, LLC's Motion to Preclude Enforcement of Judgment (Dkt. #21) and Sasson Hallier Properties, LLC's Motion to Preclude Enforcement of Judgment (Dkt. #22) are **DENIED**.

Dated: March 25, 2015.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE